UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DARLENE CATHERINE HOPKINS,

    Plaintiff,

v.                                        Case No: 6:18-cv-622-Orl-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## **OPINION AND ORDER**

Plaintiff, Darlene Catherine Hopkins, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

   **B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

On May 6, 2014, Plaintiff protectively filed an application for a period of disability and DIB, alleging a disability beginning December 30, 2013. (Tr. 113, 127, 208). Plaintiff's date last insured for disability benefits was December 31, 2018. (Tr. 219). The Agency denied Plaintiff's application at the initial and reconsideration levels. (Tr. 113, 127). Plaintiff requested a hearing and, on October 26, 2016, an administrative hearing was held before Administrative Law Judge Kevin J. Detherage (the "ALJ"). (Tr. 57-112). On January 31, 2017, the ALJ entered a decision finding Plaintiff not disabled. (Tr. 20-34). The Appeals Council denied Plaintiff's request for review on February 26, 2018. (Tr. 1). Plaintiff initiated the instant action by Complaint (Doc. 1) on April 20, 2018.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 30, 2013, the alleged onset date. (Tr. 22). At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar and cervical degenerative disc disease, obesity, depression, anxiety disorder, cervical fusion, and headaches. (Tr. 22). At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) except she is able to sit for 2 hours at a time, but then will need to stand or walk for no more than five minutes; can occasionally stoop, kneel, crouch, or crawl, can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; avoid exposure to hazards, such as heights or machinery with moving parts, avoid concentrated exposure to dust, fumes, gases, odors, or poorly ventilated areas; no production rate pace work; and occasional changes in routine work place setting. The hypothetical individual is likely to be absent from work 1 day per month.

(Tr. 25). At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a home health aide, administrative clerk, or supervisor. (Tr. 32).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 33). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such jobs as document preparer, order clerk, and final assembler. (Tr. 33-34). The ALJ concluded that Plaintiff had not been under a disability from December 30, 2013, though the date of the decision, January 31, 2017. (Tr. 34).

**II.     Analysis**

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to properly weigh the medical opinions of record; and (2) whether the Appeals Council erred by denying Plaintiff's request for review and refusing to remand the case for a new hearing due to new and material evidence submitted. The Court will address each issue in turn.

### (a) Whether the ALJ erred by failing to properly weigh the medical opinions of record.

Plaintiff argues that the ALJ erred by failing to include limitations for Plaintiff's carpal tunnel syndrome, particularly in her right dominant hand, that prevent her from repetitive wrist movements. (Doc. 20 p. 19). Plaintiff argues that the ALJ missed the opinion of treating neurologist Wasim Niazi, M.D., who opined that Plaintiff should "[a]void repetitive wrist movements" and try a "different type and size of wrist splints." (Tr. 1420). Plaintiff argues that her testimony and the opinions of Christopher Revel, M.D., and Nicolas Bancks, M.D., support Dr. Wasim Niazi's opinion. (Doc. 20 p. 19-23).

In response, Defendant argues that Dr. Niazi's opinion concerning repetitive wrist movement was made before the alleged onset date and fails to show that Plaintiff had a limitation lasting at least 12 months. (Doc. 20 p. 25-26). In addition, Defendant argues that substantial evidence supports the ALJ's RFC determination. (Doc. 20 p. 26-27).

The record shows that Dr. Niazi performed an examination of Plaintiff on November 14, 2013. (Tr. 1419-20). Dr. Niazi noted Plaintiff reported worsening numbness, tingling, pain, and swelling in both hands and forearms, right more than left, leading to sleep disturbance and dropping things. Plaintiff reported the wrist splints made symptoms worse. (Tr. 1419). On exam, Dr. Niazi noted impaired sensation in the right hand, positive median compression test and negative Phalen's test. EMG nerve conduction study test results showed reduced motor conduction velocities in the right median nerve. (Tr. 1419). There was mild to moderate reduction in sensory conduction velocities in both median nerves. (Tr. 1419). Dr. Niazi opined the study was consistent with bilateral median nerve compression at the wrists. (Tr. 1420). Dr. Niazi opined Plaintiff should "[a]void repetitive wrist movements" and try a "different type and size of wrist splints" (Tr. 1420).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In this case, the Court finds no error in the ALJ's failure to specifically weigh Dr. Niazi's opinion that Plaintiff should "[a]void repetitive wrist movements" and try a "different type and size of wrist splints." As Defendant notes, Dr. Niazi's opinion, dated November 13, 2013, was offered before Plaintiff's alleged onset date of December 30, 2013, and fails to demonstrate a limitation lasting at least 12 months. *See, e.g., Santos v. Soc. Sec. Admin., Comm'r,* 731 F. App'x 848, 856

(11th Cir. 2018) (opinions/treatment records predating alleged onset date were of limited relevance to claimant's claims); 20 C.F.R. §404.1505(a) (must show impairment for a continuous period of not less than 12 months).

While the ALJ did not directly weigh Dr. Niazi's November 2013 opinion, at step two, the ALJ considered Plaintiff's complaints of carpal tunnel syndrome and explained his reasoning for finding it nonsevere as follows:

> Clinic notes of the VA Medical Center documented her complaints of bilateral wrist pain. (Exhibit 5F). An EMG and nerve conduction studies dated in July 2014 showed severe right demyelinating and axonal and mild left demyelinating median nerve neuropathy at the wrist consistent with carpal tunnel syndrome. Remaining bilateral upper extremity nerves were the normal limits. (Exhibit 5F/19-22) Clinic notes of Deuk Spine Institute diagnosed the claimant with severe carpal tunnel in the right hand and mild in the left hand. (Exhibit 11F) Diagnostic image of the wrists dated in November 2014 showed no bone, joint or soft tissue abnormalities. (Exhibit 12F/24-25) Subsequently, in November 2015 and January 2016, claimant underwent sip open right and left carpal tunnel release with great success. Follow-up exams in 2015 and 2016 showed the claimant has been doing "well" with continued improvement in sensation in the median nerve distribution. (Exhibits 12F/45, 14F/68-84) Clinic notes of Wasim Niazi, M.D., at Brevard Neurology Associates dated in August 2016 found appropriate strength in the upper extremities and no sensory deficits. (Exhibit 18F) Moreover, there is no evidence that the claimant has any limitation in her ability to perform fine or gross manipulations with the bilateral upper extremity, or that she has significant motor or sensory deficits, or decreased grip strength or fine manipulation. Claimant is able to drive a car, use a computer, handle money, shop for items, and play games on her tablet. (Exhibits 7E, 9E, 13E, l 4E) Carpal tunnel syndrome is nonsevere.

(Tr. 23). As the ALJ observed, examinations in 2015 and 2016 document Plaintiff was doing well with continued improvement in median nerve distribution. (Tr. 23, 895, 1241). As the ALJ also noted, in August 2016 Dr. Niazi found Plaintiff had appropriate strength in the upper extremities and no sensory deficits. (Tr. 23, 1413). At that time, Dr. Niazi also documented: Plaintiff's gait was normal and she was able to perform tip-toe and heel walking; there was no

suggestion of lateralizing sensory deficit; there was limited flexion of her lumbar spine, but no tenderness; her extremities showed a normal range of motion of all joints and no cyanosis, clubbing, edema, or trophic changes. (Tr. 1413-14). The ALJ also observed Plaintiff was able to drive a car, use a computer, handle money, shop, and play games on her tablet. (Tr. 23).

The ALJ properly considered Plaintiff's carpal tunnel syndrome, including the medical evidence from Dr. Niazi, and determined that it was not a severe impairment. Substantial evidence supports the ALJ's determination and, thus, the Court will not disturb the ALJ's findings on review.

### (b) Whether the Appeals Council erred by denying Plaintiff's request for review and refusing to remand the case for a new hearing due to new and material evidence submitted.

After the ALJ entered his decision denying Plaintiff's claim, Plaintiff submitted to the Appeals Council sixteen pages from Todd Jaffe, M.D., dated October 31, 2016 to November 14, 2016. The Appeals Council determined that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). Plaintiff argues that the newly submitted evidence provides support for Dr. Jaffe's opinion and, thus, undermines the ALJ's reasoning for according the opinion little weight. (Doc. 20 p. 27-30). In response, Defendant argues that the Appeals Council properly determined that the treatment records submitted after the ALJ's decision would not change the ALJ's decision. (Doc. 20 p. 30-33).

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision'

and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (20 C.F.R. §§ 404.970(b), 416.1470(b)). New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

In this case, the Court finds no error in the Appeals Council's determination that the newly submitted evidence does not show a reasonable probability that it would change the outcome of the decision. As Defendant notes, the treatment records submitted to the Appeals Council do not change the fact that Dr. Jaffe's opinion does not reference treatment records or otherwise explain the basis for his opinion. In addition, the ALJ explained in his decision that Dr. Jaffe's opinion was inconsistent with the evidence of record. The medical record at the time of the ALJ's decision, as thoroughly discussed by the ALJ, contained ample treatment records from the relevant period. (Tr. 26-29). For example, the ALJ observed Plaintiff reported good relief after her cervical fusion. (Tr. 27, 469). The ALJ cited April 2014 records showing Plaintiff reported her neck felt pretty good and that an examination showed decreased range of motion in the cervical spine, 4/5 muscle strength in the upper and lower extremities, mild swelling, and a normal gait. (Tr. 27, 591). The ALJ discussed Dr. Niazi's treatment records from August 2016, which show a normal gait and appropriate strength in the upper and lower extremities, normal deep tendon reflexes and muscle tone and bulk, intact cranial nerves, and no pronator drift or tenderness of paraspinal muscles (neck and back), no cyanosis, clubbing, edema or tropic changes in the extremities, and a normal gait. (Tr. 29, 1413). EMG and nerve condition studies from September 2016 show evidence of mild sensorimotor polyneuropathy involving the lower extremities and no evidence of lumbar radiculopathy. (Tr. 29, 1414). The ALJ also cited clinical findings from records throughout the relevant period which did not support disabling limitations. (Tr. 29).

Plaintiff has failed to show that the new evidence submitted to the Appeals Council gives rise to a reasonable probability that it would change the outcome.  Accordingly, the Court finds no reversible error in the Appeals Council's decision denying review of Plaintiff's claim.

### III.	Conclusion

The decision of the Commissioner is **AFFIRMED.**  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 2, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties